Filed 12/17/14  In re D. B.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re D. B, a Person Coming Under the Juvenile Court Law. | D064992 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J230605) |
| v. | |
| D. B, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed.

Mazur & Mazur and Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Barry Carlton and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

D. B. (the Minor) appeals a juvenile court's decision making a true finding on two counts of robbery (Pen. Code,[1] § 211), two counts of grand theft (§ 487, subd. (c)), one count of resisting arrest (§ 148, subd. (a)(1)), one count of falsely representing his identity to a peace officer (§ 148.9, subd. (a)), and one count of using a firearm during the commission of a felony (§ 12022.5, subd. (a)(1)).

On appeal the sole issue is whether the trial court abused its discretion by denying the Minor's request for a continuance. Although we are convinced the court's denial of a continuance to produce a potential exculpatory witness was an arbitrary abuse of discretion, we are satisfied the error was harmless beyond a reasonable doubt.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

On August 12, 2013, at approximately 11:45 p.m., Nicole Southwood and Jared Falls were walking on Campanile Drive by San Diego State University (SDSU). Both Southwood and Falls were students at SDSU. Southwood and Falls noticed a group of African-Americans, including the Minor, wearing "hoodies." As Southwood and Falls walked towards their car, they heard footsteps and turned around to see four African-Americans in "hoodies" approaching them. The Minor held a gun to Southwood's head and demanded her purse and keys. Another member of the group held a gun to Fall's head and demanded his phone, wallet, and keys. After the group took Southwood's and Fall's possessions they left the scene. Southwood and Falls immediately went to their

---

1      All further statutory references are to the Penal Code unless otherwise indicated.

2

nearby friend's house and called the police. Police arrived shortly thereafter and interviewed both victims for the details and descriptions of the incident.

At approximately 11:48 p.m., San Diego Police Officer Quinton McGee received a radio call about a robbery near SDSU. The radio call described the suspects as a group of African-American men and possibly one female. Soon after, McGee saw a group of African-American men matching the description on the radio call. Officer McGee slowed down to take a closer look but when the group of men saw his patrol vehicle they ran. The group was apprehended a short time later.

San Diego Police Officer Amanda Howard transported Southwood to the location of the apprehended suspects for a curbside lineup. San Diego Police Officer Kai Johnson transported Falls. The officers admonished both Southwood and Falls about the curbside lineup prior to arriving at the scene. Officer Howard used her patrol vehicle's headlights, spotlights, and take down lights to illuminate the apprehended group and then individually presented them to Southwood. During trial, Officer Howard testified that Southwood identified the Minor as the individual who had put the gun to her head. During the curbside lineup, Officer Howard asked Southwood to confirm this was the individual and she replied, "I'm pretty positive that was him. Yeah, he was the one that threatened me."

Falls positively identified one of the individuals and stated, "He looks really familiar. It looks like him. The hat and size. He looks like the one that had the gun to my head."

*Defense Evidence*

During trial, the defense presented the testimony of Dr. Robert Shomer, a forensic psychologist. Dr. Shomer testified about the potential inaccuracy of cross-racial identification. Dr. Shomer also testified that curbside identifications are suggestive and prone to incorrect identifications.

The Minor testified during trial. The Minor testified that on the afternoon of the incident he had been at his grandfather's home. The Minor was aware at the time that he was on probation and had a curfew of 6:00 p.m. However, he testified that he left his grandfather's home at 8:00 p.m. to go meet some friends. The Minor met a group of eight to 10 people and attended a hotel party in Fashion Valley. The Minor testified that the group stayed at the party for about 30 minutes and then left by taking the trolley at the Fashion Valley station.

The entire group got off the trolley at the SDSU stop at around 11:45 p.m. The Minor explained that he intended to get off at the La Mesa trolley stop and take the bus back to his grandfather's home. However, the SDSU station was the last stop of the night for the trolley. As the group exited the SDSU trolley station they saw police cars and ran. The Minor jumped over a fence and hid under a stairwell but was detained by police. During trial, the Minor testified that he did not recall anyone in the group being dressed in "hoodies."

*Proceedings Relating to Exculpatory Evidence*

On October 24, 2013, during the adjudication hearing, the Minor's defense counsel indicated that he intended to introduce surveillance video from cameras at the SDSU

trolley station. The prosecution objected on the grounds that the videos lacked proper foundation. The trial court sustained the objection but allowed a one-week continuance for defense counsel to find the necessary foundational evidence.

On October 25, 2013, defense counsel presented the Minor's testimony and then subsequently informed the court that there were no further witnesses. The court informed defense counsel that it "want[ed] everything except the video. The video is the only thing that I am allowing you to bring later. Yesterday was the day set for trial." Defense counsel replied by informing the court that there was an additional witness[2] he wanted to call and that this witness possessed exculpatory evidence. The prosecution objected on the grounds that defense counsel was presenting "verbal evidence." Furthermore, the prosecution explained to the court that defense counsel did not give notice of his intent to call this witness and he did not make an effort to obtain the contact information of this witness despite having the police report since October 18, 2013.

The court explained to both parties, "I have been very specific that the only thing that we're going to continue the trial for is for foundation for the video. That's it. Other than that, I'm saying nothing else will come in." The court denied defense counsel's request for a continuance.

---

[2]     Appellant's opening brief explains that this witness was listed in a police report concerning a robbery that had taken place earlier that evening. Appellant argues that "an attempted robbery which occurred on Mississippi near Howard Street, a little over an hour before the robbery [of Nicole Southwood and Jared Falls] by four African-American young men wearing hoodies. The alleged victim of that incident did not identify [appellant] as one of the perpetrators."

5

DISCUSSION

I

*ABUSE OF DISCRETION*

The Minor contends the juvenile court abused its discretion in denying his request

to bring in potentially exculpatory evidence on the date to which the court had continued

the trial for the purpose of considering a video from the trolley station.  As we will

discuss, we find the court's refusal to permit the defense to attempt to introduce its

evidence was arbitrary and an abuse of discretion.  However, as we will discuss later,

after reviewing the material submitted to the court, we are satisfied the error was

harmless beyond a reasonable doubt.  We will therefore affirm the true findings and

disposition of the juvenile court.

A.  Legal Principles

As a general principle, continuances of criminal or juvenile delinquency

proceedings may only be granted upon a showing of good cause.  (§ 1050, subd. (e);

*People v. Beeler* (1995) 9 Cal.4th 953, 1003.)  The determination of whether there is

good cause for a continuance is vested in the sound discretion of the trial court.  (*People

v. Jenkins* (2000) 22 Cal.4th 900, 1037.)

In ruling on a request for continuance by the defense, the court must determine

whether the defense has acted with due diligence, but must also consider whether defense

counsel has had a reasonable opportunity to prepare.  (*People v. Doolin* (2009) 45

Cal.4th 390, 450.)

6

In order for the defense to demonstrate good cause for a continuance to produce further evidence, it must show that the proposed evidence is material and that the defense has acted with reasonable diligence to pursue the production of the evidence. (*People v. Beeler, supra*, 9 Cal.4th at p. 1003.) Appellate courts will not overturn a trial court's decision to grant or deny a continuance in the absence of a clear showing of an abuse of discretion. (*People v. Beames* (2007) 40 Cal.4th 907, 920-921.)

Even where a trial court acts within its discretion under state procedure, the United States Supreme Court has held that such procedural rules may not deprive a defendant of the right to a fair trial and to present a relevant defense. (*Chambers v. Mississippi* (1973) 410 U.S. 284, 302; see *People v. Williams* (1996) 46 Cal.App.4th 1767, 1777.) Moreover, considerations of due process require that the government produce exculpatory material to the defense. Where information in the government's possession is reasonably likely to lead to a better outcome of the case, it is deemed material within the meaning of the due process clause. (*Brady v. Maryland* (1963) 373 U.S. 83.)

## B. Analysis

There is no dispute in the record that although the events reflected in the police reports occurred on August 12, 2013, the reports were not provided to the defense until Friday, October 18, 2013, one week before the scheduled trial date. It is also undisputed that the address and contact information for the witness in the reports were blacked out. Finally, it is without dispute that defense counsel had only been recently appointed to try this case.

As the record reflects, the trial could not be completed on the day scheduled. The defense sought to introduce a video from the trolley authorities, however the prosecution objected on foundational grounds. As a result, the court decided to continue the completion of the trial for a week in order to produce the necessary foundational testimony for the video. The court was absolutely adamant, however, that all she would hear on the continued date was evidence relating to the video.

When defense counsel advised the court about the need to call the witness from the police reports the prosecutor objected. First the prosecutor made an odd objection to "verbal evidence," which was understandably overruled. Next, there was an objection to calling the defense witness because the prosecution did not receive advance notice, notwithstanding the fact the prosecution only turned over the redacted police reports on the Friday before trial.

True to the court's earlier pronouncement, it absolutely refused to even consider the defense evidence, based on the court's earlier decision that there would be nothing further allowed at the continued date except video evidence.

We conclude the court abused its discretion. It gave no consideration to the fact the defense had almost no time to analyze the possible exculpatory evidence, nor the difficulty it faced in locating a witness where all contact information had been redacted. Our review of the record indicates the court made no evaluation of the materiality of the proposed evidence and gave no consideration to the issue of tardy disclosure by the prosecution. Our reading of the record simply shows the court had earlier said it would not consider any other evidence, and true to its word, it did not. That was not a rational

8

weighing of the reasons for the delay, materiality of the proposed evidence or the existence of prejudice.  It was simply an arbitrary pronouncement, which is not an exercise of discretion.

## II

### *HARMLESS ERROR*

When defense counsel made the request to be permitted to call a witness at the continued date, counsel did not make an offer of proof.  He did, however, lodge a copy of a redacted police report regarding an attempted robbery which occurred earlier on the same night as the robbery in this case, but at a location some distance away from the instant crime.  The report shows there were somewhere between three and five young black males, wearing hooded sweatshirts (hoodies) who were involved in an attempted robbery.  According to the report the victim pushed one of the would-be robbers away and the group ran away in two different directions.

The Minor contends the excluded evidence was material and that he was prejudiced by the failure to allow its production.  The respondent contends any error was harmless.  Although we have expressed strong disagreement with the manner in which this issue was dealt with in the juvenile court, we are satisfied the error is harmless by any standard of review.

### A.  Legal Principles

Ordinarily the erroneous denial of a request for a continuance is reviewed under the ordinary harmless error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836.  (*People v Gonzales* (2005) 126 Cal.App.4th 1539, 1549.)  Under that standard, trial

9

court error is harmless unless we can say that it is reasonably probable that a different result would have occurred in the absence of the error.

The Minor argues that the trial court's action deprived him of his right to present a defense in violation of the Sixth Amendment and due process. (*Chambers v. Mississippi*, *supra,* 410 U.S. 284.) Thus he argues we should apply the standard for constitutional harmless error under *Chapman v. California* (1967) 386 U.S.18, 24. We will apply the *Watson* standard, although we are satisfied that on this record the error was harmless under either standard.

## B. Analysis

The Minor relies on the fact the victim in the attempted robbery was transported to the place where the Minor was arrested, but did not identify anyone as being involved in the attempted robbery. Presumably, the Minor would then argue that since the two crimes were probably committed by the same people, and the victim of the first crime could not identify the Minor as a perpetrator, that would raise a reasonable doubt as to the validity of the identifications by the victims of the robbery. There is nothing in this record that would support such an inference.

The attempt occurred at about 10:25 p.m. on the date of the current offense in a different part of the city. The only similarity is that there were between three and five young, tall, black males who were wearing hoodies. Otherwise, there is virtually no reason to assume the perpetrators of the attempt were the same people who robbed two people an hour and 20 minutes later in a different part of the city. Further, the witnesses

10

in the robbery were able to identify several of the participants in the robbery offense, shortly after the commission of the crime.

In the robbery at least two of the men had guns, which they pointed at the victims. Police were called within minutes of the crime and promptly encountered the group of young men, who were later identified by victims. When the group saw the patrol car they fled.

When the Minor testified and offered an exculpatory explanation of his actions, he said he spent the evening with his friend Rocky Jones, who the Minor acknowledged had pleaded guilty to the robbery. The trial court found the Minor's testimony about his actions not to be credible.

The limited information provided about the attempted robbery does not aid in any challenge to the identifications here. As we have noted, save for the fact there were young black males wearing "hoodies" there is nothing to justify an inference they were the same people that were involved in this crime. No weapons were used and the group fled when the victim resisted. The group ran away in two different directions. As best we can tell, the suspects in the attempt were all dressed in blue jeans and "hoodies." The group with the Minor included one person wearing red shorts. Another had a large "afro" and there was at least one unusual hat worn by a suspect. In sum, the mere fact that a group of young black males wearing "hoodies" attempted a robbery at a different time and a different place does not support an inference that the two groups of suspects were the same people.

11

Our analysis, of course is based on the record before us, which does not include an offer of proof and only provides the sparse information contained in the police report lodged with the court. On this record we can say that we are satisfied beyond a reasonable doubt that the error by the trial court did not contribute to the true findings on the petition. (*Chapman v. California, supra*, 386 U.S. 18, 24.)

DISPOSITION

The true findings on the petition in this case are affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


NARES, J.


HALLER, J.